UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Lonnie Rutledge</u>

    v.                                               Civil No. 17-cv-110-JD
                                                    Opinion No. 2018 DNH 042
<u>Elliot Health System</u>
<u>and Elliot Hospital</u>

O R D E R

Lonnie Rutledge brings claims against her former employer, Elliot Health System and Elliot Hospital, for age discrimination and wrongful termination. Rutledge moves to compel the defendants to produce a patient chart with personal identifiers redacted and records generated by the Exceptional Beginnings Quality Review Committee. The defendants represent that they agreed to produce the patient chart at issue after a "Qualified Protective Order was in place" but object to producing records of the Exceptional Beginnings Quality Review Committee.

## Background

In support of her motion to compel, Rutledge states that she was a nurse in the labor and delivery department at Elliot Hospital from 1990 until she was terminated on June 11, 2014. She states that she had outstanding reviews every year. The reasons given for her termination by Elliot Hospital included the care given to a patient on May 22, 2014.

Paula Wellde, Elliott Hospital's Clinical Nurse Educator, told Rutledge that a review of the care provided to the patient on May 22 was being done by the Exceptional Beginnings Quality Review Committee ("Committee"). The review was begun because of the length of time the patient's fetal monitor strip was of poor quality and the documentation during the second stage of the patient's labor. Rutledge continued to work full time while the Committee conducted its review.

On June 11, Rutledge met with Sarah Meade, director of the women's and children's division at Elliot Hospital, and Nicole Dawson, from the human resources department. At the meeting, Rutledge was told that her employment was terminated. Elliot Hospital then sent a report to the New Hampshire Board of Nursing, accusing Rutledge of unprofessional conduct. Elliot Hospital also opposed Rutledge's claim for unemployment benefits, but Rutledge prevailed after a two-day hearing.

This is the third discovery dispute that the parties have failed to resolve and have instead involved the court. In the prior two disputes, the court denied the motions to compel without prejudice and directed counsel to confer and to use their good faith efforts to resolve those matters without further involvement of the court. One of the issues raised in the current motion, privilege under RSA 151:13-a, was raised

2

previously, but not decided, because Rutledge had not complied with Federal Rule of Civil Procedure 37(a)(1). Despite the court's expectation that the parties would resolve these matters, a third motion to compel has been filed.

## Standard of Review

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). When disputes arise, a party may move to compel discovery, after first attempting in good faith to resolve the problem without court action. Fed. R. Civ. P. 37(a). Initially, the party moving to compel bears the burden of showing that the discovery it seeks is relevant. Koninklijke Philips N.V. v. Wangs Alliance Corp., 2018 WL 283893, at *1 (D. Mass. Jan. 2, 2018) (citing Continental Western Ins. Co. v. Opechee Constr. Corp., 2016 WL 1642626, at *1 (D.N.H. Apr. 25, 2016)). If that burden is met, "the objecting party bears the burden of showing that a discovery request is improper." Continental Western, 2016 WL 1642626, at *1.

## Discussion

Rutledge moves to compel the defendants to produce the patient chart for care provided by Rutledge on May 22, 2014, and

filed a proposed protective order to comply with the requirements of the Health Insurance Portability and Accountability Act ("HIPAA").[1] Rutledge also moves to compel production of records of the Committee's investigation into her care provided on May 22, and to require the defendants to produce a summary of other Committee records. The defendants object to those requests on the grounds that the proposed protective order does not comply with HIPAA requirements, that the Committee documents sought are protected by privilege under RSA 151:13-a, and that the request for a summary is disproportional to the needs of the case.

A. <u>Patient Chart</u>

The defendants indicate in their response to the current motion to compel that the first issue, disclosure of the patient chart, may be resolved with an appropriate protective order. They also indicate that they agreed to the protective order proposed by Rutledge's counsel, as long as the patient number was removed from the order. The defendants state that they

---

[1] Rutledge appended part of the patient chart to her motion for leave to file a reply but did not appear to cite the chart in her memorandum. Doc. no. 38-3. It is not clear how Rutledge obtained the chart, whether the chart has been produced by the defendants, or whether it was produced only in part.

4

object to the proposed order attached to Rutledge's motion to compel because the patient number was not removed.

Contrary to the defendants' objection, the proposed protective order attached to the motion to compel as Exhibit 5, document no. 31-6, does NOT include the patient number. In each reference, the patient is identified as "Patient D.P.    ." Therefore, the defendants' objection to the protective order, in which counsel finds fault with Rutledge's counsel for including the patient number, appears to be a mistake.

The parties seem to agree to the proposed protective order, without the patient number, and agree that the patient chart may be produced once the proposed protective order is approved by the court and docketed. Counsel shall confer and then file a joint motion for approval of an appropriate protective order.

Rutledge also references the deposition of Nurse Midwife Christine Isabelle and suggests that the patient chart is a necessary predicate to the deposition. For that reason, apparently, the deposition was cancelled, with an intent to reschedule it when the chart is produced. Rutledge's motion to compel pertains to production of the chart, not to compelling Isabelle's deposition. Therefore, no action is requested or necessary with respect to the deposition.

B.  Documents Requested in Interrogatories

Rutledge moves to compel the defendants to produce documents requested in two sets of interrogatories. Specifically, in her first set of interrogatories, Rutledge requested documents from "[t]he investigation into the events of May 22, 2014, and the decision to terminate the employment of Lonnie Rutledge, including but not limited to the investigation and meetings associated with the EB Quality Board."  Doc. 31-3, at 3.  The defendants responded:  "Elliot objects to Request No. 3 on the basis of RSA 151:13-a."

In her third set of interrogatories, Rutledge asked the defendants to provide summaries of investigations done by the Committee.[2]  Interrogatory 3 asked the defendants to "[p]rovide a summary, with identifiers redacted as necessary and appropriate, of all cases investigated by the Exceptional Beginnings Quality Committee that resulted in discipline of a nurse, physician or

---

[2] The interrogatories in the third set are numbered 1., 1., and 3.  Both the second interrogatory, which is numbered "1.", and the third interrogatory, which is numbered "3.", ask for a summary of cases investigated by the Committee that resulted in discipline of providers or employees.  The second interrogatory is limited to "discipline of a nurse" while the third interrogatory includes discipline of a nurse, physician, and other individuals associated with the hospital.  Because Interrogatory 3 appears to include the information requested in the second interrogatory, the court addresses only Interrogatory 3.

other individual associated with the Elliot Hospital." Doc. no. 31-4, at 3. Rutledge also asked for additional information about each incident included in the summary.³ The defendants responded:

> ANSWER: Objection. There is no Exceptional Beginnings Quality Board. If you are referring to the Exceptional Beginnings Quality Review Committee, review of clinical situations where there is a concern or question regarding the care of a patient by the Exceptional Beginnings Quality Review Committee is protected by the Peer Review Privilege set forth in RSA 151:13(a). The Exceptional Beginnings Quality Review Committee does not take disciplinary action against providers, nor does it make recommendations for discipline. <u>See</u> attached Exceptional Beginnings Quality Review Committee Charter, provided at DEF OOO-H8 to DEF 000-121. Elliot further objects to this Interrogatory as requiring information not relevant to Plaintiff's claims of wrongful termination and/or age discrimination and not proportional to the needs of the case as it would arguably require review of the approximately fifty to eighty incidents reviewed by the Quality Review Committee each year for an indefinite period of time and would then involve comparison of the Quality Review Committee's records against the personnel records of any providers identified in the Quality Review Committee's records to determine whether any disciplinary action was taken.

Doc. No. 31-4, at 4.

---

³ In addition, the third set of interrogatories included document requests as Part B, which again are not consecutively numbered. Although the defendants reference their objection to the request for production of documents "related to your response to Interrogatories 2 and 3 above," Rutledge did not move to compel that production.

7

1. Application of RSA 151:13-a

Federal common law governs claims of privilege in federal courts except in civil cases in which state law provides the rule of decision. Fed. R. Evid. 501. When, as here, a case is proceeding under federal subject matter jurisdiction with supplemental jurisdiction over state law claims, federal common law governs evidentiary privileges. In re TFT-LCD (Flat Panel) Antitrust Litig, 835 F.3d 1155, 1158 (9th Cir. 2016); Virmani v. Movant Health Inc., 259 F.3d 284, 286 n.3 (4th Cir. 2001) (citing cases) Davine v. Golub Corp., 2017 WL 517749, at *2 (D. Mass. Feb. 8, 2017); Tep v. Southcoast Hosps. Gr., 2014 WL 6873137, at *2 (D. Mass. Dec. 4, 2014); Smith v. Alice Peck Day Mem. Hosp., 148 F.R.D. 51, 53 (D.N.H. 1993). As is noted above, the party asserting a privilege bears the burden of showing that the privilege applies, and if the privilege is established, the opposing party must show that an exception would preclude application of the privilege. United States v. Breton, 740 F.3d 1, 9 (1st Cir. 2014).

The defendants assert that the Committee's investigation records and the requested summary are protected by RSA 151:13-a. RSA 151:13-a provides in pertinent part:

> II. Records of a hospital committee organized to evaluate matters relating to the care and treatment of patients or to reduce morbidity and mortality and testimony by hospital trustees, medical staff,

8

> employees, or other committee attendees relating to
> activities of the quality assurance committee shall be
> confidential and privileged and shall be protected
> from direct or indirect means of discovery, subpoena,
> or admission into evidence in any judicial or
> administrative proceeding. However, information,
> documents, or records otherwise available from
> original sources are not to be construed as immune
> from discovery or use in any such civil or
> administrative action merely because they were
> presented to a quality assurance program, and any
> person who supplies information or testifies as part
> of a quality assurance program, or who is a member of
> a quality assurance program committee, may not be
> prevented from testifying as to matters within his or
> her knowledge, but such witness may not be asked about
> his or her testimony before such program, or opinions
> formed by him or her, as a result of committee
> participation. Further, a program's records shall be
> discoverable in either of the following cases:
> (a) A judicial or administrative proceeding brought by
> a quality assurance committee to revoke or restrict
> the license, certification, or privileges of a
> physician or hospital staff member; or
> (b) A proceeding alleging repetitive malicious action
> and personal injury brought against a physician or
> hospital staff member.

Under New Hampshire law, the quality assurance privilege provided by RSA 151:13-a is construed narrowly. Newland v. N. Country Healthcare, Inc., 2017 WL 6397723, at *1 (D.N.H. Dec. 14, 2017) (citing In re K., 132 N.H. 4, 13 (1989)).

In Smith v. Alice Peck Day Mem. Hosp., cited by Rutledge and the defendants, the court explained the application of New Hampshire's quality assurance privilege in the context of a federal question case with supplemental state law claims. 148 F.R.D. at 53. In that case, the plaintiff asserted that her

discovery request fell within the exception to the privilege as provided in RSA 151:13-a, II(a).  Based on the analysis required to determine whether a state privilege should be recognized under federal common law, the court found that New Hampshire state courts would not apply the privilege in the circumstances of that case and also held that the privilege was not "intrinsically meritorious" in the context of a case involving revocation of physician privileges.  Id. at 54-56 (citing by In re Hampers, 651 F.2d 19, 22-23 (1st Cir. 1981)).  As a result, the court did not recognize the state law privilege under federal common law.  Id. at 54-55.

Because RSA 151:13-a is state law, it does not apply in this federal question case.  The defendants do not argue that RSA 151:13-a, as it would be applied in this case, should be recognized under federal common law and do not identify an applicable privilege under federal common law.  Since Smith was decided, other courts have declined to find a federal common law quality assurance or peer review privilege.  Hamdan v. Ind. Univ. Health N. Hosp., Inc., 880 F.3d 416, 421 (7th Cir. 2018) (citing cases).

The defendants bear the burden of showing that a privilege applies to protect the documents Rutledge seeks.  They have not carried that burden.  Therefore, the defendants shall produce

the Committee's investigation records requested in the first set of interrogatories. The summary requested in the third set of interrogatories also is not protected by the privilege provided through RSA 151:13-a, but the defendants assert another objection to that request so that the privilege issue does not resolve the motion as to the third set of interrogatories.

2. Scope of Request

The defendants contend that they should not be required to produce the summary requested in Interrogatory 3 of the third set of interrogatories because the work involved in compiling the requested summary would be disproportional to the needs of the case. The defendants also charge that counsel for Rutledge did not make any effort to resolve the proportionality issue before filing the motion to compel.

Rutledge addressed the defendants' proportionality objection in the motion to compel only in passing, instead focusing on the application of privilege under RSA 151:13-a. She states that without the summary requested in Interrogatory 3 she "is hard-pressed to obtain 'comparator' evidence showing that plaintiff was treated differently than other employees." Doc. 31-1, at 5. In her reply, Rutledge contends that the requested summary is needed to put the defendants' decision to terminate her employment in "a fair context." Doc. 38-1, at 3.

Discovery must be proportional to the needs of the case "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). In that determination, the court must make common sense judgments about the actual need for disputed discovery. Fed. Energy Reg. Comm'n v. Silkman, 2017 WL 6597510, at *6-*7 (D. Me. Dec. 26, 2017). The party seeking discovery bears the burden of showing that the information sought is important to resolving issues in the case, and the party opposing the request must show why the request entails undue burden or expense. Id.

In Interrogatory 3, Rutledge is not seeking existing documents or records from the defendants. Instead, she is asking that the defendants be compelled to review all of the Committee's records and investigations, without any date restriction, to determine whether any investigation ever led to discipline for a nurse, physician, or any other person associated with Elliot Hospital. The defendants make a credible argument that significant work would be required to compile the summary of disciplinary actions that Rutledge requests.

12

Rutledge asserts that the requested summary must be produced because "it is important to know if the committee has ever considered a case in which there is no complication to a patient, or if the committee has ever found a nurse to be unsafe because of imperfect fetal monitor records (something that happens frequently)." Doc. no. 38-1, at 3. Further, she states that "[i]t is also important to know if the committee interviewed anyone as part of its evaluation." Id.

In support, Rutledge provides an excerpt from the deposition testimony of Sarah Meade who testified that Ann Hebert made the decision to terminate Rutledge's employment. It is not clear why that testimony shows Rutledge needs a summary of Committee investigations or why she is unable to obtain the information she seeks through other means. Rutledge has not shown that the information she is asking the defendants to prepare is necessary for her case, and it appears that the information may be available through other discovery.

## Conclusion

For the foregoing reasons, the motion to compel (document no. 31) is granted in part and denied in part. The plaintiff's motion for leave to file a reply (document no. 38) is granted, and the reply was considered.

Counsel shall confer and file a joint motion for a protective order, with the proposed protective order attached, that will allow disclosure of the patient chart.

The defendants shall produce the Committee's records of its investigation into Rutledge's actions and patient care on May 22, 2014.

The motion is denied as to the summaries sought in the third set of interrogatories.

Before either party files a fourth discovery motion, counsel shall confer about the matters in dispute, making every good faith effort to resolve the issues without further involvement of the court. If another motion to compel is filed which demonstrates counsel have not made that effort, the court may impose appropriate sanctions.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge

March 7, 2018

cc: Debra Weiss Ford, Esq.
Samuel V. Maxwell, Esq.
Leslie C. Nixon, Esq.
David P. Slawsky, Esq.
Martha Van Oot, Esq.